IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAUL DENNIS YOUNGKIN,<br><br>                Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>                Defendant. | REPORT AND RECOMMENDATION<br><br><br>Case #4:20-cv-00099-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This case is referred to the undersigned from District Judge David Nuffer pursuant to 28 U.S.C. § 636(b)(1)(B). Before the Court is Plaintiff's appeal of the denial of his application for disability insurance benefits and supplemental security income. After considering the written briefs, the administrative record, and relevant legal authorities, the Court recommends that the Commissioner's decision be affirmed.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to

---

[1] Pursuant to Fed. R. Civ. P. 25(d) and the last sentence of 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

1

consider all of the evidence, although they are not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.   PROCEDURAL HISTORY

In July 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability beginning on January 1, 2017.[8] Plaintiff's claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on July 11, 2019.[10] The ALJ issued a decision on September 26, 2019, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on July 6, 2020,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

---

[4] *Id.* at 1009–10.

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 223–38.

[9] *Id.* at 103–04, 147–48.

[10] *Id.* at 37–62.

[11] *Id.* at 12–36.

[12] *Id.* at 1–6.

[13] 20 C.F.R. § 422.210(a).

On September 9, 2020, Plaintiff filed his complaint in this case.[14]  The Commissioner filed an answer and the administrative record on March 24, 2021.[15]  This case was subsequently referred to this Court under 28 U.S.C. § 636(b)(1)(B).[16]  Plaintiff filed his Opening Brief on May 26, 2021.[17]  The Commissioner's Answer Brief was filed on July 26, 2021.[18]  Plaintiff filed his Reply Brief on August 9, 2021.[19]

B.      MEDICAL HISTORY

Plaintiff alleges disability because of a heart attack, back issues, learning disabilities, and his use of a continuous positive airway pressure ("CPAP") device.[20]  Plaintiff suffered a heart attack in June 2016.[21]  In October 2016, Plaintiff injured his back while working.[22]  Plaintiff related that he has constant back pain.[23]  Plaintiff has continually reported back pain and has received treatment to help alleviate it, including injections and physical therapy.[24]

---

[14] Docket No. 3.
[15] Docket Nos. 17, 18.
[16] Docket No. 14.
[17] Docket No. 23.
[18] Docket No. 28.
[19] Docket No. 29.
[20] R. at 257.
[21] *Id.* at 432–36.
[22] *Id.* at 545, 1446.
[23] *Id.* at 271.
[24] *Id.* at 486, 512.

C.     HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that his back pain and lifting restrictions limited his ability to work.[25] Plaintiff testified that he had limited daily activities and spends most of his time in bed.[26] Plaintiff further testified that he could walk one or two blocks and could sit for 10 minutes before needing to get up.[27]

D.     THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of January 1, 2017.[28] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: herniated nucleus pulpous of the lumbar spine, obesity, history of angioplasty and stenting status post myocardial infarction, hypertension, anxiety disorder, mood disorder, and borderline intellectual functioning.[29] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[30] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations.[31] At step four, the ALJ determined that Plaintiff could not perform any past relevant work.[32] At step five, the ALJ

---

[25] *Id.* at 46.
[26] *Id.* at 48–49.
[27] *Id.* at 49–50.
[28] *Id.* at 18.
[29] *Id.*
[30] *Id.* at 18–21.
[31] *Id.* at 21–26.
[32] *Id.* at 26.

found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, he was not disabled.[33]

### III. DISCUSSION

Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence, which rendered his RFC assessment unsupported. For applications filed on or after March 27, 2017, an ALJ is not required to defer or give any specific weight to medical opinions or prior administrative medical findings.[34] Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. The most important criteria for determining persuasiveness are supportability and consistency.[35] "For supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."[36] "Consistency, on the other hand, is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."[37]

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[38] The ALJ must explain how he or she considered the supportability and consistency factors for a medical

---

[33] *Id.* at 26–28.

[34] 20 C.F.R. § 404.1520c(a).

[35] *Id.* § 404.1520c(a), (b)(2).

[36] *John H. v. Saul*, No. 2:20-CV-00255-JCB, 2021 WL 872320, at *4 (D. Utah Mar. 8, 2021) (internal quotation marks and citation omitted).

[37] *Id.*

[38] 20 C.F.R. § 404.1520c(b).

source's medical opinions or prior administrative medical findings, but is generally not required to explain how he or she considered other factors.[39] Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[40] "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[41]

Plaintiff argues that the ALJ made three errors in evaluating the medical opinion evidence: (1) the ALJ erred in his assessment of the opinions of his treatment provider, Kevin Anderson, PA-C; (2) the ALJ mischaracterized an assessment conducted by Zoran Maric, M.D.; and (3) the ALJ failed to consider the longitudinal nature of Plaintiff's impairments in assessing the remaining medical opinions. Each argument is discussed in turn.

PA Anderson provided opinions on three separate forms. In November 2017, PA Anderson opined that Plaintiff's symptoms would constantly interfere with the attention and concentration required to perform simple, work-related tasks; he would need to lie down during an 8-hour day; he could walk two blocks, sit for two hours, and stand/walk for four hours; he would need to take unscheduled breaks every one to two hours; and he would be absent from work more than four times per month.[42] In December 2018, PA Anderson opined that Plaintiff

---

[39] *Id.* § 404.1520c(b)(2).

[40] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[41] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

[42] R. at 865–66.

6

could not walk 200 feet without stopping to rest and was severely limited in his ability to walk.[43] The ALJ found that these two opinions were not supported by PA Anderson's examination findings and were not consistent with the evidence from other medical sources.[44]

The ALJ did not discuss a third form completed by PA Anderson in April 2019. There, PA Anderson noted that Plaintiff had been restricted to working less than 19 hours a week and could lift no more than 5 pounds.[45] PA Anderson also stated that Plaintiff was unable to bend or stoop.[46] Plaintiff argues that the ALJ's failure to discuss this opinion constitutes error. The Court disagrees.

The revised guidelines note that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions . . . in your case record."[47] As a result, "when a medical source provides multiple medical opinion(s) . . . we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis."[48] The regulations make clear that the ALJ is "not required to articulate how we considered each medical opinion . . . from one medical source individually."[49] Thus, the ALJ's failure to discuss

---

[43] *Id.* at 1576.
[44] *Id.*
[45] *Id.* at 1574.
[46] *Id.*
[47] 20 C.F.R. § 404.1520c(b)(1).
[48] *Id.*
[49] *Id.*

PA Anderson's April 2019 opinion was not reversible error. This is especially true where the opinion that was not discussed was largely similar to the opinions the ALJ did discuss.

Plaintiff further argues that the ALJ's treatment of PA Anderson's opinions was insufficient. In particular, Plaintiff takes issue with the ALJ's citation to two examination findings (which, in actuality, were duplicates of an office visit from January 4, 2019) to support his conclusion that PA Anderson's opinions were not supported by his examination findings.[50] Plaintiff points to other medical records that showed more limiting examination findings.[51] However, none of these records contains examination findings by PA Anderson. Rather, they are all records from other providers. Thus, they do little to suggest that the ALJ was incorrect in concluding that PA Anderson's opinions were not supported "by Mr. Anderson's examination findings."[52] Moreover, the ALJ did consider many of the records cited by Plaintiff, noting that they were generally mild, and that Plaintiff's treatment was routine and conservative in nature.[53]

Plaintiff also argues that the ALJ improperly ignored findings of muscle spasms, limited range of motion, and pain to palpitation. But, as will be discussed, the ALJ did consider findings of limited range of motion and pain yet still concluded that Plaintiff was capable of light work. Plaintiff essentially asks the Court to re-weigh the evidence to reach a different conclusion as to the persuasiveness of PA Anderson's opinions, which it cannot do.

---

[50] R. at 24 (citing *id.* at 906, 1528).

[51] Docket No. 23, at 12 (citing R. at 489, 499–500, 505, 516, 537, 547–48, 880, 881, 884, 1480, and 1522). In his brief, Plaintiff states that he treated with PA Anderson on October 5, 2017, but that treatment note reflects that it was Daniel Smith, M.D., not PA Anderson, who saw him that day. R. at 879–80.

[52] R. at 24.

[53] *Id.* at 22.

Plaintiff next argues that the ALJ erred when he relied on Dr. Maric's opinion to support his conclusion regarding the persuasiveness of PA Anderson's opinion. Dr. Maric examined Plaintiff in August 2017 for a worker's compensation claim.[54] Dr. Maric noted essentially normal findings of the lumbar spine but noted decreased range of motion and that Plaintiff complained of pain.[55] Motor strength was normal in all muscle groups and straight leg tests were negative.[56] Dr. Maric assessed a possible herniated pulposus at L4-5.[57] Dr. Maric opined that Plaintiff was capable of light duty work, and he should avoid lifting over 20 pounds and avoid repetitive bending, stooping, and kneeling.[58] Dr. Maric also recommended an updated MRI scan of the lumbar spine to determine whether Plaintiff was a surgical candidate.[59]

Plaintiff contends that the ALJ should not have found Dr. Maric's opinion persuasive because Dr. Maric's findings were temporary in nature, and he suggested an updated MRI. Plaintiff's argument on this point is less than clear. While Dr. Maric's recommendations were temporary, a straightforward interpretation of his report is that Plaintiff was limited to light work at that time and could later take on more strenuous activities as his condition improved. Dr. Maric specifically found that Plaintiff "has not reached maximum medical improvement for the injuries sustained in the industrial incident of October 31, 2016."[60]

---

[54] *Id.* at 1496–1502.
[55] *Id.* at 1499.
[56] *Id.*
[57] *Id.*
[58] *Id.* at 1501.
[59] *Id.* at 1500.
[60] *Id.* at 1501.

9

Further, Dr. Maric's suggestion for an updated MRI does not make his opinions less persuasive. Rather, the request for an updated MRI was directly related to determining whether Plaintiff was a good candidate for surgery, as was recommended by another doctor. Dr. Maric could not make a similar recommendation without the benefit of an updated MRI.[61] Plaintiff does nothing to challenge the actual reasons the ALJ provided for his finding of persuasiveness—that Dr. Maric's opinion was consistent with the clinical findings and other record evidence as well as Plaintiff's activities of daily living. These reasons go to the two primary factors for the ALJ's consideration, supportability and consistency, and are supported by substantial evidence.

Finally, Plaintiff argues that the ALJ should not have found the state agency physicians' opinions more persuasive than that of PA Anderson. While the modified regulations do away with the treating physician rule,[62] they nonetheless note that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."[63] Here, even though PA Anderson had a treating relationship with Plaintiff, the ALJ was nevertheless permitted to find his opinions less persuasive than those of the state agency physicians. The ALJ concluded that the consulting opinions were persuasive because they were supported by objective medical evidence, were

---

[61] *Id.* at 1500 ("I would recommend a repeat MRI scan of his lumbar spine prior to recommending surgery."). There is no indication that a follow-up MRI was completed and, if it was, the results are unknown.

[62] 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

[63] *Id.* § 404.1520c(c)(3)(v).

consistent with Dr. Maric's evaluation, and because the medical consultants had an understanding of Social Security disability program polices and their evidentiary requirements.[64] Plaintiff has not challenged these findings. Instead, Plaintiff contends that the ALJ failed to account for the longitudinal nature of his impairment. However, Plaintiff fails to point to evidence showing that his condition deteriorated. Rather, the evidence shows that Plaintiff's complaints of pain waxed and waned. The fact that the ALJ drew the conclusion that his pain was not disabling, despite evidence showing the existence of such pain, does not warrant reversal.[65]

## RECOMMENDATION

For these reasons, the undersigned recommends the ALJ's decision be affirmed.

Copies of this Report and Recommendation are being mailed to all parties who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation within fourteen (14) days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED April 13, 2022.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

---

[64] R. at 24.

[65] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted).